**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEYSTONE AUTOMOTIVE INDUSTRIES, INC. d/b/a ELITEK VEHICLE SERVICES, <br><br>                   Plaintiff, <br><br>     v. <br><br> REPAIRIFY, INC., <br><br>                   Defendant. | Case No.: 1:23-cv-02689 |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
<u>OPPOSED MOTION TO DISMISS OR STAY</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 2

     A.    The earlier Texas case ................................................................................ 2

     B.    Elitek's complaint in the present case ....................................................... 3

III.    LEGAL STANDARD .............................................................................................. 7

IV.    ARGUMENT .......................................................................................................... 8

     A.    The Court should dismiss this case because Elitek's claims were compulsory counterclaims in the Texas action ........................................................... 8

          1.    Elitek's claims were compulsory counterclaims under the "logical relationship" test........................................................................... 8

          2.    Elitek's claims were compulsory counterclaims under the case law in the Northern District of Illinois ............................................ 10

          3.    None of the exceptions for compulsory counterclaims apply .................. 13

     B.    Alternatively, the Court should stay this case pending resolution of the ............. 13

V.     CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*ABS Glob., Inc. v. Inguran, LLC*,
  914 F.3d 1054 (7th Cir. 2019) ..................................................... 7

*AMP, Inc. v. Zacharias*,
  No. 87 C 3244, 1987 WL 12676, 1987 U.S. Dist. LEXIS 5295
  (N.D. Ill. June 12, 1987)................................................... 1, 12

*Eon Labs., Inc. v. SmithKline Beecham Corp.*,
  298 F. Supp. 2d 175 (D. Mass. 2003)........................................ 12

*Freeman v. United States*,
  No. 92 C 20004, 1992 WL 280476, 1992 U.S. Dist. LEXIS 15088
  (N.D. Ill. Sep. 30, 1992) ................................................... 13

*In re Groupon Derivative Litig.*,
  882 F. Supp. 2d 1043 (N.D. Ill. 2012)....................................... 14

*Martino v. McDonald's Sys., Inc.*,
  598 F.2d 1079 (7th Cir. 1979) .............................................. 7

*Munson v. Butler*,
  776 F. App'x. 339 (7th Cir. 2019) .......................................... 13

*Paramount Media Grp., Inc. v. Vill. of Bellwood*,
  929 F.3d 914 (7th Cir. 2019) ............................................... 9

*Preci-Dip, SA v. Tri-Star Elecs. Int'l, Inc.*,
  No. 08 C 4192, 2008 WL 5142401, 2008 U.S. Dist. LEXIS 98465
  (N.D. Ill. Dec. 4, 2008)................................................... 12

*U.S. Philips Corp. v. Sears, Roebuck & Co.*,
  No. 85 C 5366, 1987 U.S. Dist. LEXIS 11123 (N.D. Ill. Dec. 1, 1987)........ 1, 7, 8, 11

*United States Philips Corp. v. Sears Roebuck & Co.*,
  55 F.3d 592 (Fed. Cir. 1995)............................................... 11, 15

*USM Corp. v. SPS Techs, Inc.*,
  102 F.R.D. 167 (N.D. Ill. 1984) ........................................... 1, 7, 10, 11

**Statutes**

35 U.S.C. § 285........................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................... 8

Fed. R. Civ. P. 13.................................................................................................................passim

Fed. R. Civ. P. 54......................................................................................................................... 14

Fed. R. Civ. P. 59......................................................................................................................... 14

Fed. R. Civ. P. 60......................................................................................................................... 14

## I.    INTRODUCTION

The Court should dismiss this case because all the claims in the complaint were compulsory counterclaims in the earlier case between the same parties.  In 2021, three years ago, Repairify filed a complaint for patent infringement against Elitek, and Elitek counterclaimed.  Elitek, however, held back five claims.  Elitek waited and filed those five claims in the present complaint.  Rule 13 of the Federal Rules of Civil Procedure, however, does not allow litigants to hold back compulsory counterclaims and surprise the other side with more claims in a later lawsuit.

The Seventh Circuit uses the "logical relationship" test to determine whether claims were compulsory counterclaims under Rule 13 and should be dismissed.  The Court should apply that test and dismiss Elitek's claims.  Elitek's claims—by their express terms—are all logically related to Repairify's claims in the Texas case.  Elitek's present claims all expressly cite to and rely on Repairify's claims in the Texas case.  Further, the very subject of Elitek's claims depends on the earlier Texas complaint.  Elitek claims, for example, that Repairify violated the antitrust laws by filing its patent infringement complaint in Texas.  Thus, the patent infringement complaint in Texas is at the heart of Elitek's claims.

The Northern District of Illinois has—three times in *USM Corp.*, *U.S. Philips Corp.*, and *AMP, Inc.*—found that such claims were compulsory counterclaims to the claims in the original patent lawsuit and should be dismissed because such claims were logically related to the claims in the original lawsuits.

1

## II.     BACKGROUND

### A.     The earlier Texas case

On August 9, 2021, Repairify filed a complaint for patent infringement against Elitek in the W.D. Texas.  Texas Complaint, Ex. A.  Repairify asserted three patents: the '313, '500, and '334 patents.  Ex. A ¶¶ 6-12.  Repairify included 112 paragraphs of allegations that Elitek infringed the claims of these patents.  Ex. A ¶¶ 39-150.  Repairify alleged these patents were "properly and duly issued," i.e., valid and enforceable.  Ex. A ¶ 37.  Repairify also alleged it was the "owner by assignment" of the three patents.  Ex. A ¶¶ 7, 9, 11.

On July 20, 2022, Elitek filed its answer.  Texas Answer, Ex. B.  Elitek's answer denied it infringed, denied the patents were properly and duly issued, and denied Repairify owned the patents.  Ex. B, at 2-4, 13, 18, 24, 30.  Elitek's answer raised the defenses of non-infringement, invalidity, and unenforceability due to fraud on the Patent Office.  Ex. B, at 34, 36-49.

Elitek also filed nine counterclaims.  Elitek counterclaimed that the '313 patent was not infringed, invalid, and unenforceable (Counterclaims I-III), the '500 patent was not infringed, invalid, and unenforceable (Counterclaims IV-VI), and the '334 patent was not infringed, invalid, and unenforceable (Counterclaims VII-IX).  Ex. B, at 51-57.  Elitek's unenforceability counterclaims alleged that Repairify obtained the '313, '500, and '334 patents through fraud on the Patent Office (inequitable conduct).  Ex. B, at 55-57.

After Elitek filed its counterclaims, Elitek had until Sept. 2022 to amend its answer and add further counterclaims.  Texas Scheduling Order, Ex. C, at 3.  Elitek never did.  The Texas case is set for trial this coming January, i.e., in three months.

**B.     Elitek's complaint in the present case**

After the deadline for Elitek to assert any further counterclaims lapsed in Texas, on April 28, 2023, Elitek filed the present complaint against Repairify.  Illinois Complaint, Ex. D [N.D. Ill. Dkt. 1].  Elitek alleged five claims.

**Count I** is "Monopolization and Attempted Monopolization – Walker Process."  Ex. D, at 34.  Elitek alleged that Repairify attempted to monopolize the market by "asserting" fraudulently obtained patents:

> 102.   Repairify has attempted to maintain its monopoly by knowingly asserting fraudulently obtained patents with the intent of hindering competition in the Remote Vehicle Diagnostics Market, and not just injure the recipients of those claims, but competition in the

Ex. D ¶ 102.  By "asserting," Elitek alleges that Repairify "filed a complaint" (in Texas) for patent infringement:

> 103.   On information and belief, despite knowing that the '313, '500, and '334 patents were procured by fraud, Repairify filed a complaint for patent infringement against Elitek asserting the '313, '500, and '334 patents for anticompetitive purposes.  Specifically, on information and belief, Repairify is trying to willfully maintain its monopoly power in the Remote Vehicle Diagnostics Market by asserting these patents against Elitek that it obtained by knowing and willful fraud and that it has enforced them with knowledge of the fraudulent procurement..

Ex. D ¶ 103.  Elitek then alleges the '313, '500, and '334 patents were allegedly obtained by fraud.  Ex. D ¶ 103.  Elitek raised this same alleged fraud as a defense and counterclaim in its prior answer in the Texas case.  Ex. B, at 36-49 (defenses), 55-57 (counterclaims).

**Count II** is "Monopolization and Attempted Monopolization - Sham Litigation."  Ex. D, at 41.  The alleged "sham litigation" is the Texas litigation.  Like Count I, Elitek alleges

Repairify has attempted to maintain its monopoly by "asserting" claims of patent infringement in the Texas litigation.

> 123.   Repairify has attempted to maintain its monopoly by knowingly asserting baseless claims of patent infringement with the intent that those claims, by themselves, would hinder competition in the Remote Vehicle Diagnostics Market and, and not just injure the recipients of

Ex. D ¶ 123.  Elitek pleads that the "allegations of infringement" in the Texas complaint were baseless:

> 124.   Repairify's complaint against Elitek constitutes sham litigation and subjects Repairify to the United States antitrust laws. Repairify's allegations of infringement of the '313, '500, and '334 patents against Elitek were and are objectively baseless such that no reasonable litigant could realistically expect success on the merits, subjectively baseless in that Repairify knew they were baseless, and were made not for a legitimate purpose of enforcing patent rights but to damage competition in the Remote Vehicle Diagnostics so that Repairify could maintain its monopoly power.

Ex. D ¶ 124.  Elitek pleads that Repairify's "allegations" were baseless because the '313, '500, '334 patents were not infringed, not valid, and/or not enforceable and not all owned by Repairify. Ex. D ¶¶ 125-131.  Elitek's raised these same issues of non-infringement, invalidity, unenforceability, and ownership in its defenses and counterclaims in the Texas case.  Ex. B, at 3-4 (disputing ownership), 34, 36-49 (defenses), 51-57 (counterclaims).

**Count III** is "Deceptive Trade Practices."  Ex. D, at 50.  The allegations overlap with Counts I-II.  Elitek pleads that Repairify asserted "via its complaint" that it owns the patents and that Elitek infringes, which Elitek alleges was not true and deceptive:

> 153. On information and belief, Repairify has and continues to ==assert via its complaint== that it owns the '500 and '334 patents when it does not and that Elitek has infringed and continues to infringe the '313, '500, and '334 patents when Repairify knew or should have known the '313, '500, and '334 patents were not infringed by, invalid, and/or unenforceable against Elitek, and/or by doing so was in violation of federal antitrust laws.

Ex. D ¶ 153. Like Count II, Elitek alleges the "complaint" in Texas was baseless:

> 155. On information and belief, ==Repairify's complaint against Elitek,== which was objectively baseless, as described above, was made in bad faith.

Ex. D ¶ 155. Like Counts I and II, Elitek alleges the Texas complaint violated the antitrust laws:

> 152. On information and belief, Repairify knew or should have known that ==filing its complaint== against Elitek with respect to the '313, '500, and '334 patents were also in ==violation of the antitrust law== of the United States, as discussed above.

Ex. D ¶ 152.

**Count IV** is "Common Law Unfair Competition." Ex. D, at 52. The allegations in Count IV overlap with Counts I-III. Elitek again pleads that Repairify asserted "via its complaint" that it owns the patents and Elitek infringes, which Elitek alleges was untrue:

> 163. On information and belief, Repairify has and continues to ==assert via its complaint== that it owns the '500 and '334 patents and that Elitek has infringed and continues to infringe the '313, '500, '334 patents when Repairify knew or should have known the '313, '500, and '334 patents were not infringed by, invalid, and/or unenforceable against Elitek, and/or that by doing so was in violation of Federal Antitrust laws.

Ex. D ¶ 163. Elitek again alleges the "allegations of infringement" in the Texas complaint were baseless:

5

> 165.    On information and belief, Repairify's allegations of infringement against Elitek in its lawsuit were objectively baseless and, as described above, were made in bad faith.

Ex. D ¶ 165.  Like Counts I-II, Elitek alleges the Texas complaint violated the antitrust laws:

> 162.    On information and belief, Repairify knew or should have known that its action with respect to the '313, '500, and '334 patents were also in violation of the antitrust laws of the United States, as discussed above.

Ex. D ¶ 162.

**Count V** is "Tortious Interference with Current and Prospective Business Relationships." Ex. D, at 53.  The factual allegations in Count V overlap with Counts I-IV.  Elitek yet again pleads that Repairify asserted "via its complaint" that it owns the patents and that Elitek infringes, which Elitek alleges was not true and disrupted Elitek's business relationships:

> 171.    On information and belief, Repairify disrupted Elitek's current and prospective business relationships by improper means, by asserting and continuing to assert via its complaint that it owns the '500 and '334 patents and that  Elitek has infringed and continues to infringe the '313, '500, and '334 patents when Repairify knew or should have known the '313, '500, and '334 patents were not infringed by, invalid, and/or unenforceable against Elitek, and/or by doing so, it was in violation of federal antitrust laws.

Ex. D ¶ 171.  Elitek again alleges the "allegations of infringement" in the complaint were baseless:

> 174.    On information and belief, Repairify's allegations of infringement against Elitek in its lawsuit were objectively baseless and, as described above, were made in bad faith.

Ex. D ¶ 174.  Elitek repeats its allegation that filing the Texas complaint violated the antitrust laws.  Ex. D ¶ 171.

III.    **LEGAL STANDARD**

Rule 13 of the Federal Rules of Civil Procedure governs whether a claim is a compulsory counterclaim. A claim is a compulsory counterclaim if it "arises out of the transaction or occurrence" of the opposing claim:

> (A) COMPULSORY COUNTERCLAIM.
>
> > (1) *In General*. A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
> >
> > > (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
> > >
> > > (B) does not require adding another party over whom the court cannot acquire jurisdiction.
> >
> > (2) *Exceptions*. The pleader need not state the claim if:
> >
> > > (A) when the action was commenced, the claim was the subject of another pending action; or
> > >
> > > (B) the opposing party sued on its claim by attachment or other process that did not establish personal jurisdiction over the pleader on that claim, and the pleader does not assert any counterclaim under this rule.

Fed. R. Civ. P. 13(a). To determine whether a claim "arises out of the transaction or occurrence," the Seventh Circuit uses a "logical relationship" test. *ABS Glob., Inc. v. Inguran, LLC*, 914 F.3d 1054, 1064 (7th Cir. 2019). The Seventh Circuit gives the phrase "transaction or occurrence" a "broad interpretation" to "achieve judicial economy by preventing a multiplicity of actions." *USM Corp. v. SPS Techs, Inc.*, 102 F.R.D. 167, 170 (N.D. Ill. 1984).

Rule 13 is mandatory. The claims "must" be pleaded and are "compulsory." Consequently, "[c]laims coming within the definition of compulsory counterclaims are lost if not raised at the proper time." *U.S. Philips Corp. v. Sears, Roebuck & Co.*, No. 85 C 5366, 1987 U.S. Dist. LEXIS 11123, at *10 (N.D. Ill. Dec. 1, 1987) (citing *Martino v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1081-82 (7th Cir. 1979)). This District has explained that a "[logically-related] claim must be presented under Rule 13(a) or it is forever barred." *USM Corp.*, 102 F.R.D. at 170.

7

## IV.    ARGUMENT

### A.    The Court should dismiss this case because Elitek's claims were compulsory counterclaims in the Texas action

Elitek's claims were compulsory counterclaims in the Texas action both (1) under the "logical relationship" test and (2) the case law in the Northern District of Illinois.  Because Elitek chose not to raise the claims in the Texas action, Elitek's claims are now barred. *U.S. Philips Corp.*, 1987 U.S. Dist. LEXIS 11123, at *10 [Ex. E] ("Claims coming within the definition of compulsory counterclaims are lost if not raised at the proper time."); Fed. R. Civ. P. 12(b)(6), 13(a).

#### 1.    Elitek's claims were compulsory counterclaims under the "logical relationship" test

Elitek's claims are all logically related to Repairify's earlier patent infringement claims in the Texas complaint for four reasons.

First, as shown above in the background, Elitek's claims all expressly cite to and rely on Repairify's earlier patent infringement claims in Texas.

Second, Elitek's claims all dispute allegations in the original Texas complaint.  The original Texas complaint alleged that the '313, '500, and '334 patents were "properly and duly issued."  Ex. A ¶ 37.  Count I disputes this and counter alleges that the '313, '500, and '334 patents were issued due to fraud on the Patent Office.  Ex. D ¶ 103.  The original Texas complaint alleged that Repairify owns the '313, '500, and '334 patents and Elitek infringes the patents.  Ex. A, at 2-3.  Counts II, III, IV, and V dispute this and counter allege that Repairify does not own the '500 and '334 patents, and Elitek does not infringe any of the three patents, which Elitek then counter alleges means the original Texas complaint was a sham, deceptive, unfair competition, etc.  Ex. D ¶¶ 124-126, 153, 161, 171.

Third, Elitek's claims all repeat and rely on issues it already raised as defenses to the patent infringement claims in the Texas case. Count I alleged it was monopolistic to assert patents obtained by alleged fraud. Ex. D ¶¶ 102-03. But Elitek already raised fraudulent procurement as a defense in the Texas case, which confirms this issue is logically related to the Texas case. Ex. B, at 36-49. Count II alleged it was monopolistic to assert patents that were not infringed and invalid. Ex. D ¶¶ 123, 126-27. But, again, Elitek already raised non-infringement and invalidity as defenses in the Texas case, which confirms these issues are logically related to the Texas case. Ex. B, at 34. Counts III, IV, and V likewise alleged it was deceptive, unfair, and interfering to assert patents that were not infringed and invalid. Ex. D, at 50-53. Elitek already raised non-infringement and invalidity as defenses in the Texas case. Ex. B, at 37.

Fourth, Elitek's claims all expressly cite to and rely on the assertions and claims in the Texas complaint to establish fundamental elements of the counts.

**Count I (Monopolization—Walker Process Fraud).** A fundamental element of a monopolization claim is "the willful acquisition or maintenance" of monopoly power. *Paramount Media Grp., Inc. v. Vill. of Bellwood*, 929 F.3d 914, 921 (7th Cir. 2019). To plead this element, Count I alleges that Repairify willfully maintained monopoly power because it is "asserting" its patents and "filed a complaint for patent infringement." Ex. D ¶ 103. Thus, the patent infringement claims in Texas are one of the specific transactions that supplies the element of the cause of action.

**Count II (Monopolization—Sham Litigation).** Like Count I, Count II alleges that Repairify willfully maintained monopoly power by "asserting" claims of "patent infringement." Ex. D ¶ 123. Count II pleads that Repairify's "allegations of infringement" in the "complaint" are a sham. Ex. D ¶ 124. Thus, Count II is not only "logically related" to Repairify's patent

infringement claims in Texas—the patent infringement claims in Texas are the specific transactions that supply the alleged "sham" element of Elitek's theory.

**Counts III-V (Deceptive Trade Practices, Unfair Competition, Tortious Interference).** A fundamental element of these counts is a deceptive, unfair, or unjustified action. In all three counts, Elitek alleges that the allegations in the Texas lawsuit were deceptive, unfair, or unjustified. Ex. D ¶¶ 156, 166, 174. Thus, again, Count III-V are not only "logically related" to Repairify's patent infringement claim in Texas—Repairify's earlier claims in Texas are one of the specific transactions that supply the alleged deceptive, unfair, or unjustified element of the cause of action.

### 2. Elitek's claims were compulsory counterclaims under the case law in the Northern District of Illinois

The Northern District of Illinois has considered in at least three cases whether antitrust and fraudulent procurement claims are compulsory counterclaims in the original patent infringement lawsuit. This District first considered the issue in *USM Corp. v. SPS Technologies, Inc.*, 102 F.R.D. 167 (N.D. Ill. 1984). SPS filed a complaint for patent infringement against USM. *Id.* at 168. Then, several years later, USM filed an antitrust complaint against SPS alleging that SPS's original patent infringement complaint violated the antitrust laws because the patent at issue was procured by fraud. *Id.* SPS argued, *inter alia*, that the antitrust claim was a compulsory counterclaim in the original lawsuit and therefore barred under Rule 13. *Id.* at 169. The Court agreed. *Id.* at 170. The Court applied the logical relationship test and determined the antitrust claims were logically related to the earlier patent infringement claims, explaining:

> [T]he fraudulent procurement of a patent claim, whether asserted as a defense to an infringement suit or brought separately as an antitrust claim, is 'logically related' to a claim for patent infringement. As such, that claim must be presented under Rule 13(a) or it is forever barred. Therefore, USM's antitrust claim under Count V of the Amended Complaint cannot be maintained in this suit because it was a compulsory counterclaim to SPS' claim in the 1969 infringement litigation.

10

*USM Corp.*, 102 F.R.D. at 170.[1]

This District also considered the issue in *U.S. Philips Corp. v. Sears, Roebuck & Co.*, 1987 U.S. Dist. LEXIS 11123 (N.D. Ill. Dec. 1, 1987) [Ex. E]. Philips filed a first complaint for patent infringement against a seller (Windmere) and its manufacturer (Izumi) in Florida. *Id.* at *1, 4. Later, Philips filed a complaint for patent infringement against another seller (Sears) and the manufacturer (again Izumi) on the same patent in the Northern District of Illinois. *Id.* at *2. Izumi countered with an antitrust claim. *Id.* Philips moved to dismiss the antitrust claim and argued Izumi's antitrust claim should have been filed as a compulsory counterclaim in the first patent infringement case in Florida. *Id.* at *3, 10. The Court applied the "logical relationship" test and agreed that the antitrust claim was logically related to the first patent infringement case. *Id.* at *11, 13. The Court further explained: "Permitting Izumi to raise the very antitrust counterclaim which it had available to it, and indeed was required to raise, in the prior action would result in an impermissible splitting of the same basic controversy between the Florida suit and the one at bar, and an untenable waste of judicial resources." *Id.* at *15-16. The Federal Circuit likewise explained: "the place to challenge litigation as sham is in the asserted sham litigation, to which Izumi was a party." *United States Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 597 (Fed. Cir. 1995).

---

[1] In a prior brief, Elitek cited the *Mercoid* case in response to the *USM* case. *Mercoid* is a case from 1944 from the Supreme Court. *USM* specifically addressed *Mercoid*: "Notwithstanding *Mercoid*, the majority of courts, when faced with this issue, have held that antitrust claims are compulsory counterclaims under Rule 13(a) if the antitrust claim arises out of the same transaction or occurrence as the original claim." *USM Corp.*, 102 F.R.D. at 169-170. *USM* concluded: "this Court restricts the *Mercoid* holding to its facts and rejects USM's contention that the antitrust claim cannot be construed as a compulsory counterclaim under Rule 13(a)." *Id.* at 170. Therefore, *USM* is directly on point and distinguishes Elitek's main case according to its prior brief.

This District also considered the issue in *AMP, Inc. v. Zacharias*, No. 87 C 3244, 1987 WL 12676, 1987 U.S. Dist. LEXIS 5295 (N.D. Ill. June 12, 1987). Precision filed a patent infringement complaint against AMP in Florida. *Id.* at *4. Later, AMP filed a complaint in the Northern District of Illinois alleging fraudulent procurement of the patent in the earlier patent infringement complaint. *Id.* at *5. Precision moved to dismiss and argued AMP's claim should have been filed as a compulsory counterclaim in the first patent infringement case in Florida. *Id.* at *1. The Court applied the "logical relationship" test and agreed that the claim was logically related to the first patent infringement case. *Id.* at *4. The Court explained "a claim involving the same patent(s) as is involved in the original action, as is the case here, usually is considered to arise from the same transactions as the main claim." *Id.* at *9. In dismissing the complaint, the Court further explained: "the Seventh Circuit has held that the fact that a claim constitutes a compulsory counterclaim in a previously filed pending action is sufficient grounds to require dismissal of the subsequently filed suit." *Id.* at *9, 11.

This District's case law on antitrust claims also has relevance to Elitek's state law claims (Counts III-V) because Elitek's state law claims all incorporate the antitrust allegations. Ex. D ¶¶ 152, 162, 171. Furthermore, the case law confirms that state law claims such as unfair trade practices, tortious interference, etc. premised on the assertion of a patent in an earlier case must be filed as compulsory counterclaims in the earlier case and otherwise dismissed. *See Eon Labs., Inc. v. SmithKline Beecham Corp.*, 298 F. Supp. 2d 175, 178-79, 184 (D. Mass. 2003) (holding that claims for (1) violation of the antitrust and unfair trade practices statutes and (2) tortious interference were barred as compulsory counterclaims in an underlying patent infringement action); *Preci-Dip, SA v. Tri-Star Elecs. Int'l, Inc.*, No. 08 C 4192, 2008 WL 5142401, 2008 U.S. Dist. LEXIS 98465, at *6 n.2 (N.D. Ill. Dec. 4, 2008) (noting the unfair competition claims in the

12

Illinois suit were so closely related to the patent infringement claim in the original California suit that Preci-Dip would be required to raise them as counterclaims in the California suit).

### 3. None of the exceptions for compulsory counterclaims apply

Rule 13 provides for only two exceptions to pleading a compulsory counterclaim and neither applies:

> (2) *Exceptions*. The pleader need not state the claim if:
>
>> (A) when the action was commenced, the claim was the subject of another pending action; or
>>
>> (B) the opposing party sued on its claim by attachment or other process that did not establish personal jurisdiction over the pleader on that claim, and the pleader does not assert any counterclaim under this rule.

Fed. R. Civ. P. 13(a)(2).

Exception (A) does not apply. Elitek's claims were not the subject of another pending action when Repairify filed its complaint—Repairify's complaint was the first action. Exception (B) also does not apply. Elitek was not sued by "attachment" in the Texas action. Repairify established normal personal jurisdiction. Ex. A, at 3-8.

### B. Alternatively, the Court should stay this case pending resolution of the Texas case

If the Court does not dismiss the complaint, Repairify requests the Court stay this case pending resolution of the first-filed Texas case that is mere months from trial. A district court has inherent power to exercise its discretion to stay proceedings to "avoid unnecessary litigation of the same issues." *Munson v. Butler*, 776 F. App'x. 339, 342 (7th Cir. 2019). The "general rule" is that "comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously." *Freeman v. United States*, No. 92 C 20004, 1992 WL 280476, 1992 U.S. Dist. LEXIS 15088, at *4 (N.D. Ill. Sep. 30, 1992). In deciding whether to grant a stay, courts consider (1) whether a stay will simplify the issues in

question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party. *In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012). All three factors support a stay.

**Simplification**. A stay will simplify the issues because the Texas trial will be directly addressing allegations in every one of Elitek's claims. Every one of Elitek's claims alleges, variously, that the Texas complaint lacked merit because the '313, '500, and '334 patents are not infringed, not valid, and not enforceable due to fraud. Ex. D ¶ 103. The Texas trial will be directly addressing at least whether the '313 patent is infringed, not valid, and not enforceable due to fraud.[2] Elitek has raised all these as defenses. Ex. B, at 34, 36-39.

Elitek may counter that the Texas trial will not address the allegations for the '500 and '334 patents because the Court dismissed these patents before trial, but this is unpersuasive. First, Elitek <u>does</u> have the opportunity to raise the merit of the '500 and '334 patents in the Texas case. If, as Elitek alleges here, Elitek believes the allegations for the '500 and '334 patents lacked merit, Elitek has the opportunity to bring a motion for "exceptional" case in the Texas case based on the '500 and '334 patents if Elitek prevails in the Texas case. 35 U.S.C. § 285. The Texas court is already familiar with the '500 and '334 patents having presided over them for two years. Second, the '500 and '334 patents are directly related to the '313 patent. Thus, inevitably, the result on the '313 patent will inform issues on the '500 and '334 patents. Third, the test is simplification, not complete elimination of all issues. Fourth, regardless, the Texas trial <u>can</u> completely eliminate at least four of the five counts here. Count II alleges that the Texas

---

[2] Repairify has also filed a motion in Texas under Rules 54, 59 and 60 to bring the '334 patent back into the case, in which case the Texas trial will also address whether the '334 patent is infringed, not valid, and not enforceable, which Elitek has raised as defenses.

14

complaint was baseless without any merit. Ex. D ¶ 124. But, if the jury determines Elitek does infringe the '313 patent, that conclusively establishes the complaint did have merit and eliminates Count II. *See United States Philips Corp.*, 55 F.3d at 597 ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."). Counts III, IV, and V also require a further showing of harm based on the Texas complaint, which Elitek alleges was one lost customer. Ex. D ¶¶ 154, 164, 172. But, if the jury determines Elitek does infringe the '313 patent, this is not a cognizable harm because Repairify, as a matter of law, is entitled to ask for an injunction to prevent Elitek from selling to all of its United States customers.

**Burden.** A stay will reduce the burden of litigation on both parties. Litigating two cases in two forums is burdensome for both parties, especially when one of the cases is mere months from trial. It would be extremely distracting, for example, for the parties to be conducting discovery while they are in trial against each other.

**Prejudice**. There is no "undue" prejudice to Elitek. Both parties benefit from focusing their attention on the trial in the first filed action.

## V.    CONCLUSION

The Court should dismiss Elitek's claims. The plain language of Rule 13 is mandatory and provides no exception for saving compulsory counterclaims for a later case.

Date: October 11, 2024

/s/ William F. Bullard
Joseph W. Winkels (*pro hac vice*)
William F. Bullard (*pro hac vice*)
CARLSON, CASPERS, VANDENBURGH &
LINDQUIST, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
T: (612) 436-9600
E: jwinkels@carlsoncaspers.com
E: wbullard@carlsoncaspers.com

Benjamin T. Horton
Marshall, Gerstein & Borun LLP
6300 Willis Tower
233 S. Wacker Drive
Chicago, IL 60606
T: (312) 474.6300
E: bhorton@marshallip.com

*Counsel for Plaintiff, Repairify, Inc.*